FERGUSON, Judge.
Sylvia Cohen initiated this action seeking rescission of a Purchase and Sale Agreement and return of a cash deposit made towards the purchase of a one-bedroom condominium unit. The developer, Champlain Towers North Associates, counterclaimed seeking to retain the deposit. Plaintiff appeals from a final adjudication on the counterclaim that the developer is entitled to retain the $26,600 deposit because plaintiff anticipatorily breached the agreement. We reverse.
The selling price of the unit was $133,-000. The Purchase and Sale Agreement provided in part:
3. MORTGAGE. If the purchase price is to be paid partly by mortgage proceeds, then the parties acknowledge and agree that this Agreement is subject to Purchaser’s qualification and approval by the mortgage lender....
[[Image here]]
In the event that the Purchaser be unable to qualify or in the event that the said mortgage is not made available by the lending institution, despite diligent application and processing by the Purchaser, then the Seller shall either return to the Purchaser all deposits made, with interest, and the Agreement between the parties shall be deemed cancelled and no further force and effect, or the Seller may elect to provide or obtain a loan for 50% of the purchase price, in accordance with the same terms, years, interest rate, loan fees, closing costs, and conditions as charged by institutional lenders, and the Purchaser agrees to increase the cash for the balance to make up the remaining 50% of the purchase price.
The contract provided more specifically that the price was to be paid in part by a mortgage loan in the amount of $93,100.
Cohen applied for a mortgage with the developer’s institutional lender, but was informed on July 1, 1981 that she qualified for only a $40,000 loan for a term of 29 years. The developer orally offered plaintiff a 50%, three-to-five year, “negatively amortized,” [1] balloon mortgage. There is no evidence that the developer offered the plaintiff a 50% mortgage loan on the same terms as the institutional lender.
On or about December 7, 1981, Cohen sent a letter to the developer informing it that:
In view of the fact that I did not qualify for a 70% mortgage, I realize that the Purchase and Sale Agreement gives you two options: (1) to refund my deposits or (2) to provide me with a loan for 50% of the purchase price.
[[Image here]]
Since my financial situation does not even permit me to consider a 50% loan, for I could neither make an additional 30% deposit nor manage such high monthly payments, I respectfully ask that you review my situation and the good faith with which I entered into this agreement and return my deposits, [e.s.]
When Cohen failed to close within the time specified in a letter mailed to her on or about February 23, 1982, she was sent an *991 other letter dated March 25, 1982, informing her that she was in default.
The dispositive question, as phrased by plaintiff, is whether the developer was entitled to retain the plaintiffs deposit as damages where the developer failed to prove that it had the ability to perform the condition precedent of supplying mortgage financing as required under the contract. The developer’s response is that it was relieved of the obligation to provide financing owing to plaintiffs anticipatory breach as evidenced by her letter stating that she would be unable to accept any 50% loan.
The controlling case is Hospital Mortgage Group v. First Prudential Development Corp., 411 So.2d 181 (Fla.1982), which thoroughly examines the law of anticipatory repudiation by an offeree where there is also a condition precedent obligation of the offeror. There the Florida Supreme Court stated:
The holder of the duty based upon a condition precedent cannot profit from an anticipatory repudiation of a contract that he would have breached himself. It follows that if performance of the conditions precedent is excused the ability to perform them must still be shown. 411 So.2d at 183.
In this case the developer did not plead nor prove that it could have performed the condition precedent, ie., to provide or obtain for plaintiff, “a loan for 50% of the purchase price, in accordance with the same terms, years, interest rate, loan fees, closing costs and conditions as charged by institutional lenders.” The uncontroverted testimony is that the financing offered to plaintiff by the developer was not the same as that offered to buyers by institutional lenders.
The final judgment is reversed in its entirety and remanded with instructions to enter judgment for plaintiff.[2]

. Negative amortization, says plaintiff, means that during the life of the mortgage period, the principal balance increases rather than decreases.

. Plaintiff further argues that it was error for the trial judge to invalidate Florida Administrative Code Rule 7D-18.01(3) on the grounds that the Division of Florida Land Sales and Condominiums was without statutory authority to enact the rule. Because the Division was not joined as a party to the action, the trial court should not have passed on the question. See Martinez v. Balbin, 76 So.2d 488 (Fla.1954).