464 So.2d 705 (1985)
BLUE LAKES APARTMENTS, LTD., Appellant/Cross Appellee,
v.
GEORGE GOWING, INC., Appellee/Cross-Appellant.
No. 83-1609.
District Court of Appeal of Florida, Fourth District.
March 13, 1985.
*706 Peter Sachs and Spencer M. Sax of Sachs & Weiss, P.A., Boca Raton, for appellant/cross appellee.
Philip J. Gouze, Fort Lauderdale, for appellee/cross appellant.
HURLEY, Judge.
This is an appeal from a breach of contract action involving the purchase and sale of a condominium unit. It questions whether the seller was guilty of anticipatory repudiation and, if so, whether the trial court correctly calculated the buyer's damages. We affirm in part and reverse in part.
Blue Lakes Apartments, Ltd. (Blue Lakes/seller) is the developer of a large *707 condominium complex in Broward County. George Gowing, Inc. (Gowing/buyer) worked on the project as a subcontractor doing interior trim work. When the units were first offered for sale, well before their completion, Gowing contracted to purchase two identical units for $54,000 apiece. He planned to resell them for a profit and, in fact, later resold one of the units for $72,000. This appeal centers on the contract for the other unit.
The contract called for a deposit of $5,400 and contained the following pertinent provisions:
CLOSING: ... This transaction shall be closed upon notification from the Seller to the purchaser... .
DEFAULT BY PURCHASER: Purchaser's failure to close this transaction ... shall be considered a breach of this Agreement and all monies deposited hereunder together with interest ... may be retained by Seller as agreed and liquidated damages... .
DEFAULT BY SELLER: In the event the Seller fails to close ... Purchaser shall have the right prior to closing only either to cancel and terminate this Agreement, in which event Purchaser's damages shall be limited to the return of the entire deposit ... without interest ... Neither party shall have the right of specific performance.[1]
The parties also executed a mortgage financing rider which, by its terms, became part of the contract. The rider indicated that Gowing desired "an institutional mortgage for financing the purchase of the ... Condominium Unit from a lender recommended by the Seller." The principal sum of the mortgage was to be $48,600 payable over twenty-nine years "at the prevailing rate of interest in effect at the time of closing." The rider further provided that, as an alternative to institutional financing, "the Seller, at its sole option, shall have the right to provide mortgage financing by taking back a purchase money mortgage...." In this regard, the rider granted the Seller "the right to reject the Purchaser's credit if it proves inadequate, in which event, the Seller may return to the Purchaser all deposits ... and the parties will be mutually relieved from all liability...."
Pursuant to the rider, Blue Lakes recommended Biscayne Federal Savings & Loan Association ("the bank") to which Gowing submitted a loan application. Through a mix-up, the bank failed to notify Gowing that his loan had been denied. (The same bank approved a loan for Gowing's other unit.) The bank did notify Blue Lakes, however, which in turn instructed its attorney to return Gowing's deposit. Accordingly, the attorney sent a check for $5,400 to Gowing, stating that it represented "a return of your deposit and the cancellation of your contract in accordance with your instructions." By this time, the apartments had begun to appreciate in value and were selling for approximately $60,000. Consequently, Gowing returned the check immediately, expressing the view that the contract remained "in full force and effect." Blue Lakes, however, stood firm and again returned the check. The accompanying letter stated that the seller was invoking its rights under the last paragraph of the mortgage financing rider.
Within days, Gowing instituted suit for specific performance.[2] The case was eventually tried by the court sitting without a jury. At its conclusion, the court ruled for Gowing, awarding $6,000 compensatory damages, $12,000 punitive damages, plus costs. The court, however, refused to honor the contractual provision for attorney's fees to the prevailing party. Its rationale was that the verdict exacted a sufficient *708 penalty from the seller. Both parties appealed.
Blue Lakes first contends that the trial court erred by finding a breach of contract. According to its view, the mortgage financing rider created a condition precedent and, thus, all contractual obligations dissolved when Gowing failed to obtain financing from Biscayne Federal or the seller. This interpretation, however, is not supported by the rider's plain language. Nowhere does it state that the buyer is restricted to the one institutional lender recommended by the seller. Indeed, at oral argument, Blue Lakes' counsel candidly admitted that the rider left the buyer free to obtain financing from the lender of his choice. Furthermore, the rider does not prohibit the buyer from closing with cash, a point conceded by the seller throughout the case. Finally, we note that the mortgage financing rider was drafted by the seller. This too augurs against the rigid interpretation advanced by the seller. If there is any "doubt as to the meaning the parties intended by the contract language, the language will ordinarily be interpreted in a light less favorable to the party drawing the contract." MacIntyre v. Green's Pool Service, Inc., 347 So.2d 1081, 1084 (Fla. 3d DCA 1977). Thus we hold that the trial court properly rejected the seller's stringent interpretation.
The parties' contract gave the seller the right to schedule a closing after reasonable notice to the buyer. Rather than follow this route, the seller terminated the contract by twice returning the buyer's deposit. It is difficult to conceive of a more clear-cut act of repudiation. "The doctrine of anticipatory repudiation is part of the law of contracts in Florida." Southern Crane Rentals, Inc. v. City of Gainesville, 429 So.2d 771, 773 (Fla. 1st DCA 1983).
(1) Where an obligor repudiates a duty before he has committed a breach by non-performance and before he has received all of the agreed exchange for it, his repudiation alone gives rise to a claim for damages for total breach.
(2) Where performances are to be exchanged under an exchange of promises, one party's repudiation of a duty to render performance discharges the other party's remaining duties to render performance.
Therefore, the nonbreaching party is relieved of its duty to tender performance and has an immediate cause of action against the breaching party.
Hospital Mortgage Group v. First Prudential Development Corp., 411 So.2d 181, 182 (Fla. 1982) (quoting Restatement (Second) of Contracts § 253 (1979)).
Anticipatory repudiation does not automatically entitle the non-breaching party to damages. It "obviates the requirement that the conditions be performed, but not that they be performance." Ibid.
The holder of the duty based upon a condition precedent cannot profit from an anticipatory repudiation of a contract that he would have breached himself. It follows that if performance of the conditions precedent is excused the ability to perform them must still be shown.
Hospital Mortgage Group v. First Prudential Development Corp., supra at 183; see also Cohen v. Champlain Towers North Associates, 452 So.2d 989 (Fla. 3d DCA 1984).
As for evidence of the buyer's ability to perform, Gowing listed his equity interest in several properties which, he said, could have been pledged as security for a loan. Gowing also testified that he could have borrowed the money from his mother-in-law. Mrs. Gowing corroborated this testimony, stating that she and her mother jointly owned $50,000 in "T-bills" which could have been used to purchase the Blue Lakes unit. As an appellate court, we must disregard conflicting evidence and accept the facts in evidence which are most favorable to the party that prevailed below. See Spurrier v. United Bank, 359 So.2d 908 (Fla. 1st DCA 1978); Jacquin-Florida Distilling Co. v. Reynolds, Smith & Hills, Architects-Engineers-Planners, Inc., 319 So.2d 604 (Fla. 1st DCA 1975). Employing this standard, we *709 find substantial, competent evidence that the buyer was capable of performing the condition precedent by securing alternate financing.
Blue Lakes' second line of defense is the contract's default-by-seller clause. It specifies that the buyer's remedy is limited to the return of his deposit. (We note that the seller's remedy is the retention of the deposit.) Blue Lakes suggests that this is a valid, bargained-for limitation of remedy which should be enforced. We disagree. "There is no question that parties to a contract may agree to limit their respective remedies and that those remedies need not be the same. Such contractual provisions, however, must be reasonable to be enforced." Ocean Dunes of Hutchinson Island Development Corp. v. Colangelo, 463 So.2d 437 (Fla. 4th DCA 1985) (citations omitted). Blue Lakes' heads-I-win, tails-you-lose approach to defaults is so rapaciously skewed as to be patently unreasonable. It subverts the contract by permitting one party to breach with impunity. For this reason, we rejected the identical provision in Colangelo, noting that "the seller's obligations are wholly illusory, while the buyers' are quite real." Ibid. Such provisions are antithetical to the concept of fair dealing in the marketplace and will not be enforced by courts of law.
Since Blue Lakes sold Gowing's unit to a third party prior to trial, the court awarded loss of bargain compensatory damages instead of specific performance. Both the substitution and measure of damages were correct. Under the facts of this case, compensatory damages appropriately included "loss of [the buyer's] bargain, which is the difference between the value of the property [at the time of breach] and the contract price." Wolofsky v. Behrman, 454 So.2d 614, 615 (Fla. 4th DCA 1984); see also Zipper v. Affordable Homes, Inc., 461 So.2d 988 (Fla. 1st DCA 1984); Frank Silvestri, Inc. v. Hilltop Developers, Inc., 418 So.2d 1201 (Fla. 5th DCA 1982). The trial court's award of $6,000 compensatory damages is substantiated by evidence that, at the time of the seller's repudiation, comparable units were selling for $60,000. Additionally, Gowing testified that his other identical unit sold for $72,000 within a year of closing. The trial court also knew that Blue Lakes resold Gowing's unit for $67,000. Viewing the totality of this evidence in the light most favorable to Gowing, the prevailing party, we hold that the record supports the court's compensatory damage award.
We cannot say the same about the award of punitive damages. "Punitive damages are not recoverable for breach of contract, irrespective of the motive of defendant except where the acts constituting a breach of contract also amount to a cause of action in tort... ." Nicholas v. Miami Burglar Alarm Co., 339 So.2d 175 (Fla. 1976); see also American International Land Corp. v. Hanna, 323 So.2d 567 (Fla. 1975). The record in this case is devoid of any justification to support the trial court's award of punitive damages and, therefore, it must be reversed. Similarly, the trial court erred by failing to enforce the parties' contractual agreement to award attorney's fees to Gowing as the prevailing party. Where a contract provides for an award of attorney's fees to the prevailing party in any litigation arising out of the contract a court is without discretion to decline to enforce the provision. See Brickell Bay Club Condominium Association v. Forte, 397 So.2d 959 (Fla. 3d DCA), rev. denied, 408 So.2d 1092 (Fla. 1981). Moreover, given such a contractual provision, it is improper to deny attorney's fees under a "balancing of the equities" theory. See McCormick v. Molenkamp, 449 So.2d 384 (Fla. 1st DCA 1984). Therefore, on remand, we instruct the trial court to award Gowing reasonable attorney's fees for representation at trial and on appeal.
The judgment on appeal is affirmed in part and reversed in part and the cause is remanded with instructions.
LETTS and DELL, JJ., concur.
NOTES
[1] As indicated, the default-by-seller clause contains the word "either" which suggests an alternative. In this instance, however, the clause limits the buyer to one remedy, viz., the return of the deposit.
[2] The complaint sought specific performance, compensatory and punitive damages, plus attorney's fees and costs. Although the default-by-seller clause of the contract specified that "[n]either party shall have the right of specific performance," the seller failed to assert this provision timely as an affirmative defense.